## A01A1936. BURNS v. THE STATE.
(555 SE2d 209)

ELDRIDGE, Judge.

A Fulton County jury found Dargan Burns guilty of violating OCGA § 40-6-271, duty upon striking an unattended vehicle. He appeals, claiming that the trial court erred in denying his motion for directed verdict and that the trial court abused its sentencing discretion by imposing a $1,000 fine that included reimbursement for indigent defense fees. Upon review, we affirm Burns' conviction, but vacate the fine imposed and remand for resentencing as to such.

Viewed in a light most favorable to upholding the jury's verdict,[1] the evidence shows that, at approximately 10:30 p.m., Burns arrived at a nightclub called Club Taste off Courtland Street in Atlanta and parked in the club's privately owned parking lot. The parking lot was "packed." At approximately 11:45 p.m., the parking lot owner observed Burns attempt to exit the lot and in the process strike two vehicles. He testified that "Mr. Burns was in the car at that present point in time when I approached him. He had already hit two cars. And I asked Mr. Burns to exit the car. And at that time Mr. Burns refused. And I asked Mr. Burns several times to exit the car so that I could locate the drivers of the other cars that were damaged." The lot owner told Burns that he could not leave the lot until the owners of the damaged vehicles were located. When the lot owner refused to allow him to leave, "Mr. Burns then started driving his car, parked his car, got out of his car and went back into the club." The owner called the police. He wrote down the tag numbers, descriptions, and models of the cars that were hit and sent one of his valets inside the club to locate the owners. The vehicles' owners came out of the club while Burns was still inside. The lot owner "told them that their cars were hit. One owner decided she wanted to, he or she wanted to leave. The other owner stayed there." The police arrived within 15 minutes of the call by the lot owner. When they arrived, they found Burns inside the club standing near the bar. *Held*:

1. Burns first claims the trial court erred in denying his motion for directed verdict of acquittal. The standard of review for the denial of a motion for a directed verdict is the same as that for reviewing the sufficiency of the evidence to support a conviction. "Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Goddard v. State*, 244 Ga. App. 730, 733 (2) (536 SE2d 160) (2000).

In that regard, under Georgia law, one's duty upon striking an unattended vehicle is to

> immediately stop and . . . then and there either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or . . . leave in a conspicuous place on the vehicle struck a written notice giving the name and address of the driver and the owner of the vehicle doing the striking.[3]

Here, it is undisputed that Burns did not leave written notification of his damage to the vehicles. And the evidence is that Burns did not attempt to locate and notify the owners of the vehicles he struck. Instead, when confronted with his actions by the parking lot owner, Burns refused to exit his vehicle and wanted to leave the parking lot. The parking lot owner frustrated this desire when he would not permit Burns to exit the lot until the owners of the damaged vehicles were located.

On appeal, Burns challenges the State's failure to call to the stand the owners of the vehicles. He claims that, absent the car owners' testimony, there was insufficient proof that he did not notify them when he went back inside the club. We disagree. Burns' contention involves purely a jury question as to the weight of proof regarding an element of the offense. If the State can prove through means other than the owners' testimony that Burns did not notify them of the damage to their vehicles, the State is not required to call the owners. "[T]he credibility and weight to be accorded the evidence are . . . task[s] for the jury."[4]

In this case, Burns did not take the stand and never claimed that he contacted the owners of the cars when he went back inside the club, so there was no factual allegation with regard thereto for the State to rebut. The State's evidence showed that Burns had no intention of notifying the owners of the damage to their vehicles, but wanted to leave the parking lot. The evidence shows that Burns did not obtain the make, model, or description of either of the vehicles that he hit but, instead, reentered the club immediately after exiting his car. The parking lot was full and the club was filled with people; thus, without any information about the cars that had been hit, Burns could not have identified the car owners in order to notify them. Finally, when the police located Burns, he was standing at the bar in the club, not attempting to locate the car owners who had

---

[3] OCGA § 40-6-271 (a).
[4] *Ashley v. State*, 240 Ga. App. 502, 503 (1) (523 SE2d 901) (1999).

already been contacted by the lot owner and had left the club. This evidence is sufficient to demonstrate that Burns did not "immediately stop and . . . then and there . . . locate and notify the operator or owner of such vehicle" of the damage thereto, even without the owners' testimony to that fact.[5] Accordingly, this evidence was sufficient for a rational trier of fact to have found each essential element of the crime charged beyond a reasonable doubt, and denial of Burns' motion for directed verdict was not error.

2. Burns was declared indigent on the basis of an indigent affidavit and was appointed a county public defender. Following his conviction, a sentencing hearing was held during which the trial court called into question the validity of Burns' indigent affidavit, because a defense witness who testified during trial stated that Burns is an accountant. Upon questioning, it was established that Burns was formerly Comptroller for Morehouse College and had been an accountant for 20 years, serving in both a public and private capacity. He is a certified public accountant (CPA) and had just started his own full service CPA firm, Burns & Associates. Burns told the trial court that he was indigent at the time he filed his affidavit because he had incurred substantial losses when his brokerage accounts with E*Trade and Ameritrade lost money "during the course of the year as the dot coms went down." So, in filing his prior year's taxes, Burns declared an income of "in excess of $50,000," but declared "Schedule C and Schedule D losses in excess of $70,000, which created net losses for the year." No documentation was presented in support of his contentions. Nor was there evidence of Burns' assets, expenses, income, or outstanding obligations. Burns stated that prior to trial he had been receiving unemployment and was still indigent at the time of sentencing because he had just started his new business.

The trial court then imposed a fine of $1,000. Defense counsel objected that the sentence was "a little excessive" for a misdemeanor, and the trial court stated, "Well, I've got under consideration to make him pay some attorney's fees."

OCGA § 17-12-10 (c) provides that to the extent that a person covered under the standards to determine indigence is able to provide for the employment of an attorney, "the court concerned may order him to provide for this payment or reimbursement." However, "under OCGA § 17-12-10 (c), a superior court may tax additional

---

[5] Contrary to a contention contained as a corollary to this first enumeration of error, the failure to call the owners of the vehicles did not deny Burns his "right to confront his accusers." The owners of the vehicles were not Burns' accusers, nor did they witness the incident in question. Since it was unnecessary for the State to call the car owners in order to prove the essential elements of its case, no confrontation clause issue arises from the failure to call them.

amounts onto any fine or restitution where a criminal defendant was represented by a full or part-time public defender, but the court may only order such payments or reimbursements to the extent of the individual defendant's financial capability to pay."[6] It appears clear that Burns may very well have the ability to reimburse the county "over time" for the indigent defense fees spent on his behalf.[7] However, there is no factual determination in the record of "the amount of [Burns'] assets, expenses, income, or outstanding obligations, so as to determine his ability to reimburse the county for the cost of his legal representation."[8] In fact, the judge appointed Burns' public defender to represent him on appeal. Thus, "the trial court inappropriately sentenced the indigent defendant to pay for the cost of his legal representation, where the record provides no basis for a determination that he was able to pay for the employment of the attorney."[9] "As there was no record basis for the trial court to determine that [Burns] was 'able to provide for the employment of an attorney,' that portion of the sentence which required [a fine which included attorney fees] must be vacated and the case remanded for resentencing in this regard, consistent with the statute and case law."[10]

*Judgment affirmed, sentence imposing fine vacated and case remanded. Andrews, P. J., and Miller, J., concur.*

DECIDED OCTOBER 11, 2001.

*Joe Morris III*, for appellant.
*Joseph J. Drolet, Solicitor-General, Jennifer L. Moore, Assistant Solicitor-General*, for appellee.

---

[6] 1985 Op. Atty. Gen. 203, U85-32.

[7] *Raines v. State*, 242 Ga. App. 727, 731 (3) (531 SE2d 158) (2000).

[8] (Citations and punctuation omitted.) *Hall v. State*, 189 Ga. App. 824, 825 (2) (377 SE2d 907) (1989).

[9] *Owens v. State*, 187 Ga. App. 262, 263 (1) (369 SE2d 919) (1988).

[10] *Reid v. State*, 224 Ga. App. 524, 527 (481 SE2d 259) (1997).